251278 Edwards Lifesciences v. Thompson. Counsel, ready? Please proceed. Thank you, Your Honor. Robert Riley on behalf of Michael Thompson. Everything in this case turns on an erroneous trade secrets ruling that information that was public, dated, merely in Mr. Thompson's head, not in a document compiled by his employer Edwards and and filed away somewhere in a secret place. But information he learned as a salesperson was all a trade secret. Information available on the information was a trade secret. And this case is not a threatened misappropriation case. Because in the reply brief, Edwards has said they disavowed that they are relying on threatened misappropriation. They claim actual misappropriation. Under the law, that's not possessing something. Not acquiring it legally while you're employed by Edwards. It's wrongful use of the information. There is zero evidence in this record that Mr. Thompson ever used any of the claimed trade secret information and communicated it to a customer. Ever. He pledged he wouldn't do it when he was hired by Abbott. Abbott instructed him not to do that. And he agreed. And that is uncontradicted in this record. Well, Counsel, can I get you to start with the mootness point, though? Certainly, Your Honor. Thank you. The test for mootness is whether there are no continuing consequences of the trade secrets ruling. There's no effectual relief that you could give. And the burden isn't on us. It's on the movement to prove that. This trade secrets ruling says, if you've got information in your head, Mr. Thompson, you can't solicit, you can't sell without using it. That was the evidence they put in as how he misappropriated. It's in his head. He can't get it out of his head. He's got to use it. So there's a continuing effect of the trade secrets finding that hangs like a sword of Damocles over his head. Yeah, but how? Let's say he engages in some conduct, transaction in his new position that would have violated the previous injunction that was in place. Could he be held in contempt? There is no injunction. They could seek another injunction. And if they did, and it was in place, then you could appeal it. But if it is capable of repetition under the mootness doctrine, this court has the discretion to deal with it now. Capable of repetition and incapable of being adequately supervised or remedied. It's not just capable of repetition. It has to be that the repetition is not susceptible to individual remedies. That is, the repetition would occur so quick that you couldn't get a remedy in place. We couldn't get one. You would drop it and then they'd start a new one and drop it and start a new one and so forth and you could never keep up with it. So it has to also be incapable of being regulated. If it does occur again, why couldn't at that certain point they could say, now we see a pattern, now we want a broader injunction? We'd have to come up again and what would happen to us again is the temporary injunction would expire before we could get a ruling. We even tried to waive oral argument in order to get a ruling before it expired. That's why it's capable of repetition. What is suggesting that it would be so short again? I mean, that's the problem here, right? It's a very short duration, but why wouldn't it be longer? Why wouldn't you be standing up and asking for a longer one given the experience here? We don't control what they request in terms of another preliminary injunction. Well, you would at least be arguing in terms of length, wouldn't you? They seek, right now, they seek a permanent injunction. They seek damages for any sale he made, using, misappropriating by having in his head this information that he learned being a salesman for both Abbott and Edwards four different times. All of it under this ruling, all of it, disables him from selling to anybody without subjecting himself to this claim. But isn't the problem that because it's still an ongoing case, you're here appealing an injunction, which we can do, so long as, as we pointed out, the injunction is still in force and it is not. But what you're asking, it sounds like you may be asking, is for this court now to give an advisory opinion, if you will, on the merits of all these other issues that are still alive in the case when, in using the vehicle of 1292 to get there. So tell me why that's wrong. Well, that wasn't our intention when we filed this appeal. We wanted to get it up while it pended, and we just couldn't get a decision. But the problem that Mr. Thompson confronts is that he's got to conduct his business life right now. He's free to solicit. But because he has this information in his head, under the rulings, which I believe aren't supported by Colorado law or the cases interpreting the relevant statutes, because public information, which was held to be a trade secret, is not, as a matter of law, or as a matter of contract, by the way. The contract itself, the employment contract says, if it's public information, if it's readily accessible, it's not a trade secret. That was an interpretation of law of a contract. All of those legal rulings are in place. This court can correct those legal errors, and the impact will be substantial on the ability of this man to earn a living without exposing himself to damages claims under these erroneous rulings. Isn't that a risk that every business person faces, whether they've got a case that has been around or not? There's always a risk that whatever action they take may expose them to liability. It's part of our system, which may be a plus or a minus, but you've got that threat any time you do anything, and how are these people any more privileged, or why should they be any more privileged than anybody else? I take your point. Here's what's different about this situation. This isn't the ordinary risk that would be run by somebody who signed an employment agreement. The risk arises from an erroneous district court opinion, which holds these things that are not trade secrets under Colorado law to be trade secrets, to hold that it's misappropriation to have it in his head and solicit a sale because he can't get it out of his head. So there's that extra layer of prejudice, Your Honor, that distinguishes it from the ordinary risk any business person can confront. You're saying simply that there's a precedent out there that is troublesome, but every business person has to deal with all kinds of precedent, whether they were involved in the precedent making or not. Yeah, but in this case, it's directed with a bullseye on Mr. Thompson's back. It isn't about somebody else. It's not about what's in somebody else's head. It's what's in his head that has been declared improperly against the precedents, against the statute, to be a trade secret. Stale information. That's a trade secret. Information that he never, on this record, shared with any customer is still a misappropriation. So I think that's what distinguishes it from the ordinary risk that a business person confronts. And this court can grant some effective relief there. You can clarify that those aren't trade secrets. That's not, as a matter of law, misappropriation. Just possessing information isn't actual misappropriation. That would advance this case considerably. It wouldn't give perfect assurance. If our ruling was only possessing trade secret isn't a violation, and that's what Thompson is doing and complained about, that he is being charged or at risk for simply possessing the information, why isn't that an adequate, why isn't that, well, why is he feeling threatened? Because the trial court said that is actual misappropriation, to have it in your head and solicit a sale. May I share with what Edwards' witness said on this subject, Your Honor? He was asked, we asked, what's your evidence that there was actual misappropriation? He said, he has the information, so it's impossible not to use it. He can't erase it from his mind. In all but name, that's the inevitable disclosure doctrine. The lawyers, for Edwards, may disclaim relying on it. The district court didn't admit it was relying on it. That's the evidence of what their claim of actual misappropriation is. And that's, it's erroneous as a matter of law. Counsel, part of your presentation, as I understand it here this morning, is that there is some urgency to this matter, because your client is in this, you know, trap, if you will, about information he can use. And you said a moment ago, well, we just, we tried to sort of press this urgently, but we couldn't get a decision. The inference being maybe that our court didn't move at the pace of your liking. But as I'm looking here at the docket, the district court's injunction was entered on June 18th. The civil case was filed here on June 21st. Briefs were filed, and it's not until December 1st that you filed a motion to expedite the appeal. That's true. So in terms of your presentation of sort of the urgency and why we must step in and review an injunction that's no longer in place, how do we interpret sort of the procedural history before this court in the context of the presentation you're making? Number one, I didn't mean to imply that the court was tardy. I meant to suggest that the nature of these appeals is that they oftentimes evade review because they expire. There are preliminary injunctions of limited duration. There are any number of cases that are reported in the district courts that evade appeal because they expire. We did our best. I grant you that is when we asked for the expedited ruling and offered to waive oral argument because this had dragged on, including granting as a courtesy some extensions, both directions, by the way. We couldn't get it done. We understand that. But it doesn't make these issues less meaningful to Mr. Thompson and the public policy of the state of Colorado strongly supports his right to make a living. I see that I've got a little less than three minutes, and I'd like to reserve it, if I may, for rebuttal. May it please the court. Tim Kratz for the plaintiffs, appellees in this case, Edwards Life Sciences, LLC, and Edwards Life Sciences Corporation. Pleasure to be here today, Your Honors. The appeal is removed. The district court found, issued a preliminary injunction, had three parts to it. One dealt with non-solicitation. One dealt with non-competition. And one dealt with the disclosure of Edwards' confidential information. All those were to last for a set period of time. That set period of time, without question, expired on January 16th of this year. There is no injunctive relief that is continuing on in this case at this point in time. As Judge Ebel pointed out, to the extent that Mr. Thompson feels that he has this preliminary injunction opinion hanging over his head that is preventing him from being able to earn a living, Mr. Thompson has a legal duty not to misappropriate trade secrets, regardless of a preliminary injunction ruling. Mr. Thompson has a contract with Edwards that says do not take and use our confidential information, regardless of this ruling that took place in this case. This is quite clearly a request for an advisory opinion and nothing more, and is not something that, respectfully, this court should delve into when the trial court proceeding is alive and well. And Mr. Thompson will have, most likely, an opportunity to appeal this after a final ruling, after the trial court finalizes its case. And one other thing that I think is important here, Mr. Thompson, in his appeal brief, did not appeal that third aspect of the preliminary injunction, the restraint on him using Edwards' confidential information going forward. There was no specific argument in his appeal brief that that aspect of the preliminary injunction should be overturned. So here he's complaining about a ruling that is allegedly impacting his ability to get by, and it's not even one of the rulings that he actually addresses in his appeal brief. He does address the trade secret aspect of things. He does not address the third prong of the injunction that was entered. Counsel, since the motion was filed to dismiss on mootness grounds and the response has been filed, has there been any change to facts and circumstances? I think the last response was filed January 30th, so not that long ago. But have there been any change to the facts and circumstances of the case that would impact our assessment of mootness? None that I am aware of, Your Honor. We have not filed, yeah, the injunction ran on January 16th, I was going to point out. Several months have gone by. We have not filed any new requests for another preliminary injunction in the case. And Mr. Thompson has, you know, as part of the record, I'm sure, in the case, and he puts it in his opening brief, has told us that I'm not using that information. Okay. Counsel, could you turn to the capable of repetition yet evading review exception to the mootness doctrine and how, I guess in your view, it does not apply here? Certainly, Your Honor. Let's talk about the evading review part of that. It's probably the most significant part of it. Mr. Thompson is contending that, well, actually, strike that. Capable of repetition, I think, is really where I want to go. Mr. Thompson is contending that we're going to go after him again for violation of his agreement or for using our trade secrets. There is no, it isn't just that there's a, the Tenth Circuit authority on that isn't just a possibility of that. It has to be a reasonable probability. And Mr. Thompson has provided us with no facts whatsoever to indicate that there is any reasonable probability that we are going to make another claim against him that he, to seek injunctive plea. Well, I guess he would say, why wouldn't you? Well, one reason we wouldn't is because he has sworn to us that he's not using that information. So that would be one particular reason. And you would take his word for it even though you sued him? No, that's a fair question. Honestly, no, we wouldn't probably take his word for it. Still, I just don't think there, I don't think he meets the standard here. Well, you brought one once. I guess the inference is you would do it again. How about that? I'm sorry, what? You brought, you sought an injunction once. Why wouldn't you do it again? Why wouldn't you seek another injunction? It's just drawing an inference from the first one. Right. And the reason would be that because we would have to have new evidence of his misuse of our confidential information in order to go after him again at this point in time. Okay, how about the evading review part then? I mean, what would prevent then just assume that you did seek another injunction and you obtained one, but it was for short duration and it expired before an appeal could be taken? I mean, I think the evading review aspect of this case goes back to what has happened previously in the case. And they waited, you know, the full 30 days before filing their notice of appeal. And as Judge Federico pointed out, they did not file any motion to expedite the appeal until well into the briefing in the case. So I think the fact that they have not pursued diligently the appeal backfires on them in their argument that this would be evading review. Well, now they know they have to act quickly, right? Right. They didn't know before perhaps? Right. I don't know. And I'm sorry, I didn't mean to interrupt. No, no, go ahead. Okay, okay. So I think you're honored to know this, but the standard is not just evading review or capable of repetition. Both of those aspects, both of those factors have to be met in order for us to allow the appeal to move forward in this situation. Thank you. Sure. And, I mean, it's important to note that the non-compete provisions have absolutely expired. Edwards could not assert the same claims against Thompson at this point in time because the claims involved the non-compete provisions as well as the non-disclosure provisions. Those non-compete provisions could never be asserted again against Mr. Thompson. He's not going to go to work for Edwards again, enter another non-compete agreement, and have this type of litigation. How is Edwards any more at risk than millions of other people that have confidential information perhaps in their head from prior employment situations? Since there's no injunction against Edwards, isn't everybody out there who has learned something from a prior job for which they have an agreement not to compete is facing the same problem with this precedent? This precedent doesn't single out Edwards. It would be applicable, I suppose, to anybody within the jurisdiction of the court. So how does he have any particularized risk here? In this situation, Your Honor, there is much more than just some generalized knowledge in Mr. Thompson's head. There's a myriad of facts uncontested in the case which have been downplayed by opposing counsel in the oral argument that exist here that create a serious threat and risk of misappropriation, not of generalized information but of trade secrets. The information that is in Mr. Thompson's head and, by the way, which he sent to himself via email as he was interviewing with his competitive company. So the fact that he does not possess any of this information in hard copy format is simply not true. The evidence in the record, as found by Judge Rodriguez, is that some of this information was actually sent by him to his own personal email at the same time he was working for a competitor. But to get more specifically to your question, the information that Mr. Thompson has and that he admits, at least in some extent, to remembering includes things like he had around 20 customers in the state of Colorado. He remembers specific rebate tiers and market share discounts for those customers in Colorado. It's not that hard for someone as intelligent as Mr. Thompson is to remember critical pricing details like that and to be able to go out and use that against Edwards, against my client, going forward. Because these are not simply list prices, you know, X amount of dollars, Your Honor. It is a rebate structure based on the volume of units sold, and that rebate structure can change significantly depending on certain market share arrangements. If one customer is buying 80% of its heart implant units from Edwards, the discount goes down. If one is buying 90%, you know, the discount goes up, that type of thing. Very specific pricing details that indeed could be remembered by someone like Mr. Thompson. Indeed, he admits he does remember some of that information and could be used to seriously harm my client, Edwards. Also, client preferences, another trade secret. Which physicians want to be involved in trials? Which physicians are extremely cost conscious? Which physicians are more interested in the ease of implanting one of these devices? He worked for Edwards for many years developing close relationships with those clients, and that is the type of information that is absolutely protectable and is justified the protection that was granted by Judge Rodriguez in this case.  So, I do think that it's the brief recitation of some of the facts pertinent to the case would be helpful to you as you evaluate this. Because there is this sort of overriding concern that we can't show irreparable harm that's been argued by opposing counsel. Just based on the idea that potentially in the future Mr. Thompson could reveal some information that he has. So, I think it's important to just understand a brief chronology of what Mr. Thompson indeed has done. He engaged in a text exchange with Abbott's area vice president of TAVR, a competing unit, Chris Waddell, while he was interviewing for his position with Abbott. And he gave Mr. Waddell his direct competitor advice on new territories that he believed Abbott should consider opening up. Another text with Waddell, he recommends potential customer sites that he recommends Abbott, that he thinks Abbott would, that these sites would be friendly to TAVR trials. And he gives Mr. Waddell information on who the key implanters are at each of those sites. And then just days before he resigned from our employment, your honors, he sent himself an email to his, he sent an email to his personal email with a TMTT business planning tool. And that was just three days prior to his resignation that had confidential Edwards information in it. He also, on the day before his resignation, was accessing numerous TAVR, Edwards TAVR, confidential documents. Again, just the day before he turned in his resignation to go to this competing entity. So, this isn't a hypothetical pie in the sky. He has some general information in his head type of situation that he's going to use in the future. As found by Judge Rodriguez, there are very concrete acts at issue here that give rise to a clear issue that Mr. Thompson could cause irreparable harm. And again, I don't know what meaningful relief, getting back to the mootness point, I don't know that there's any meaningful relief that this court could grant at this point. If the court were to wade into the trade secret issue, which by the way is a question of fact, which could only be overturned on abuse of discretion grounds. And it would be a purely an advisory opinion going down to the lower court on an issue, a live case, a live case that is still moving forward. And I just, I just, it does not seem like the type of relief that, I don't, I don't know how that would even play into the, at the trial court level if something like that were handed down at this point. And, you know, a similar argument was made in one of the cases that is cited by both sides for support. Sort of this law of the case argument, it was the Vitelli case, which is in the mootness argument. And the court rejected that, saying that preliminary injunction findings of law and fact are not binding at the, at the, at a trial. So thank you, Your Honor. It's a great honor to be able to appear for you. May it please the court, I'd like to pick up a couple of those marbles very quickly. That TMT, TMTT tool was sent to another Edwards employee by Mr. Thompson while he was employed by Edwards, never to a customer, never to a competitor. That's, as a matter of law, that's not misappropriation. The text exchange, Edwards filed it in the public record, not once, not twice, but multiple times, and waived any claim that its identification of customers was a trade secret. With due respect to counsel, this court said in Rio Grande that the standard on mootness is, is, is not that you have to prove that repetition is more probable than not. Specifically so held. It just needs to be capable of repetition. You didn't hear counsel say, look, that, that trade secret's ruling is a nullity. They didn't because they want to rely on it in the trial court as a ruling by the judge. Your Honor, interestingly, Edwards says, even if you should find this moot, whatever you should do, don't vacate this ruling. Why do they say that? Don't vacate it. Because it's not a nullity in their mind. They're going to assert that, that those rulings of law were proper to the judge who made them. And that's what we're going to confront. Let me ask you the same question. What would be your argument for why we should vacate an injunction that's no longer in place? Because you, you should vacate the trade secret's ruling that is in place, and the entirety of the injunction was based upon an error of law regarding the trade secret's exception, enforcing a, a non-solicitation clause that made no reference at all to trade secrets, let alone limiting itself to you can't solicit if you use trade secrets. That's not what it said. That's not what the injunction said. That's not what the contract said. That ruling was an error, a clear error of law. I see I'm out of time. I appreciate the opportunity. On behalf of Mr. Thompson, we ask for some relief. Thank you. Thank you, Counsel. Counsel is excused and the case is submitted.